## STREETER *v.* JEFFERSON COUNTY BANK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 81. Argued December 7, 1892. — Decided January 3, 1893.

A creditor of a bankrupt caused execution to be levied, before the bankruptcy, on goods of the bankrupt to satisfy the debt. The levy was afterwards set aside, as an illegal preference within the purview of the bankrupt act in consequence of knowledge of the debtor's condition by the plaintiff's attorney. *Held*, that the creditor was not thereby precluded

from proving his debt against the bankrupt; and that an endorser of the note of the bankrupt to the creditor, on which the judgment was founded, was not discharged from his liability as endorser by reason of the levy being declared in fraud of the provisions of the bankrupt law, Rev. Stat., § 5084, and § 5021 as amended by the act of June 22, 1874, 18 Stat. 178, 181.

On each of the dates, January 21 and February 7, and February 12, 1877, at the city of Watertown, Jefferson County, New York, Henry V. Cadwell, James C. Cadwell, and Lewis A. Cadwell, copartners doing business as such under the firm name of H. V. Cadwell & Co., executed their promissory note, payable one month from date, to the order of H. V. Cadwell & Co. at the Jefferson County National Bank of Watertown, New York, the first two notes being for the sum of $1000 each, and the third for $750. Each of said notes was endorsed by the firm in their firm name and by John C. Streeter, as accommodation endorser, and passed into the possession of the bank, the defendant in error.

The notes, at their maturity, were presented for payment where the same were payable, and payment thereof demanded, which was refused; whereupon the notes were duly protested for non-payment, and notice of such demand, refusal and protest, in each instance thereof, was then and there duly given to each of said endorsers.

On or about the 16th day of March, 1877, the bank commenced an action on the three notes in the Supreme Court of the State of New York against Henry V. Cadwell, James C. Cadwell and Lewis A. Cadwell, and such proceedings were had therein that the plaintiff, the said bank, recovered a judgment against the makers of the said notes for the full amount thereof. In this action the plaintiff in error, John C. Streeter, was impleaded as a defendant, but no service was made on him, and he did not appear. On the same day an execution on the judgment was issued and delivered to the sheriff of Jefferson County, who by virtue thereof levied upon the property of the defendants to an amount sufficient to satisfy the execution.

On the day the said levy was made a petition in bankruptcy

was filed in the District Court of the United States for the Northern District of New York against the said Henry V. Cadwell, James C. Cadwell, and Lewis A. Cadwell, upon which petition the said Cadwells were, on May 1, 1877, adjudged bankrupts, and an assignee of their property was appointed. By order of the court the sale, by virtue of the said execution, of the property so levied upon was enjoined, and the sheriff was appointed receiver of the estate of the said bankrupts, and directed to sell the property levied upon by him, and deposit the proceeds of such sale in the depository of the said court, subject to the further order of the court; which sale was made and the proceeds so deposited. The order also directed that the lien of the judgment creditors, if there should be such lien, should follow and attach to the moneys arising from the said sale.

In November, 1877, John C. Brown, the assignee, filed his bill in equity in the said District Court of the United States, charging that the said bank, being a creditor of the said Henry V. Cadwell, James C. Cadwell, and Lewis A. Cadwell, and having reason to believe that they, the said Cadwells, were insolvent, did, with the assent, connivance, and procurement of the said Cadwells, and knowing that a fraud on the act of Congress of March 2, 1867, and acts supplementary to and amendatory thereof, was intended, commenced an action in the Supreme Court of the State of New York against the said Cadwells, in which action the said bank obtained judgment as aforesaid upon the said notes against the makers thereof. This bill avers that before the filing thereof the assignee demanded of the defendant, the said bank, that it surrender its preference and all claims derived from the judgment to the property of the said Cadwells, and all liens it claimed to have by virtue of the said judgment and execution, which the bank refused, and persisted in refusing to do. The bill alleged that said judgment and execution were void as against the assignee by reason of these acts, and prayed that the said judgments be decreed to be in fraud of the said bankruptcy laws of the United States, and void as against the plaintiff and creditors of the insolvents aforesaid.

The answer to this bill admits the refusal of the said bank to surrender its said preference and liens, but denies that it had knowledge of the insolvency of the said Cadwells at the time its said action was commenced against them, that said judgments were obtained with the consent, connivance and procurement of the makers of the said notes, and that any fraud was intended upon the bankruptcy laws of the United States. Other allegations appear in the bill and answer, but upon them there was no contention at the trial of the cause.

The court being of opinion, from the evidence before it, that the said bankrupts, in contemplation of insolvency, desiring to secure their endorsers and the said bank, had decided to do so by means of judgments and executions; and that as the attorneys who brought the actions were the bankrupts' attorneys, and as the attorneys were under no professional obligations not to disclose the circumstances and designs of clients who desired to assist their employer, the said bank should be charged with all the knowledge possessed by the said attorneys. The court therefore rendered a decree in the cause, adjudging the said judgment and execution void as against the complainant, the said assignee, and that the money which arose from the said sale by said receiver belonged to the said assignee.

The defendant, the said bank, took an appeal from this judgment and decree to the Circuit Court of the United States for the Northern District of New York, where the action of the said District Court was affirmed, and judgment of affirmation entered in the said Circuit Court on March 15, 1881. Subsequently, upon an order of the said court, the money so deposited as aforesaid was paid to the said assignee.

In September, 1881, the Jefferson County National Bank brought an action in the Supreme Court of the State of New York against John C. Streeter, as endorser on the said notes, for the respective amounts thereof, averring in its complaint the protest for non-payment of the said notes and notice thereof duly given to the said endorser, and alleging liability on the part of the said endorser for their payment. The defendant, Streeter, in his answer to said complaint, alleges that by reason

of a fraudulent arrangement between the bank and the makers of the said notes, by which the bank became a preferred creditor of the same, and by reason of the decree aforesaid of the said Circuit Court of the United States adjudging such action of the bank to be void, the bank had, by reason of the provisions of the said statutes of the United States, precluded itself from all right or claim against the property of the makers of the said notes, and that all rights and remedies on the part of the bank and of himself, the said Streeter, were thereby lost: and that the defendant was thereby discharged from all liability to the plaintiff as endorser of said notes.

This case came for trial in the said Supreme Court of New York, and a jury being waived, was tried by the court and judgment given for the plaintiff; the court holding that the bank was not precluded from making a claim against the property of the makers of the said notes, or from proving its claim against them as bankrupts, and that the defendant, Streeter, had not been discharged from liability as endorser on said notes.

An appeal from this judgment was taken to the Court of Appeals of the State of New York, which affirmed the order of the said Supreme Court. 106 N. Y. 186. On *remittitur*, entered June 8, 1887, the judgment of the said Supreme Court of Appeals was made the order of the said Supreme Court of New York.

Thereupon the said John C. Streeter, defendant in the said action, sued out this writ of error.

*Mr. Watson M. Rogers* for plaintiff in error.

That the defendant in error in this action procured from the makers of the notes in suit, a fraudulent and preferential judgment, which was forbidden by law, cannot be disputed. That was the very issue tried in the United States District and Circuit Courts, and that was the fact that was adjudged in the suit between the defendant in error and the assignee of the makers. It must be accepted and treated as a fundamental

fact in the case.  *Brown* v. *Jefferson County Bank*, 19 Blatch-ford, 333.

This fraudulent and unlawful preference has never been sur-rendered by the bank.   On the contrary, it litigated the matter with the assignee, and was defeated, and then the fund was turned over to the assignee.   Final judgment was entered against the bank, and the record does not show that anything further was done.

The word "surrender," as used in the statute, implies a vol-untary giving up by the creditor to the assignee of the prefer-ence.   Then he may prove his debt.   But if he chooses to contest the title of the assignee and judgment is recovered against him, he cannot prove it.   *In re Drummond*, 4 Bissell, 149 ; *In re Stephens*, 3 Bissell, 187.

The bank cannot, under the provisions of the Federal statute, prove the notes endorsed by the defendant, nor the judgment recovered upon them, against the estate of the makers.

It would seem, therefore, that the only contention that can possibly arise on that question is as to whether it can prove for a moiety or at all.   For the purpose of the question involved in this case it is wholly immaterial whether the holder of the note by reason of its fraudulent act in obtaining a preference is prohibited from proving its *whole* debt or a moiety thereof.

The result is just the same in this case.   If the holder has by its own acts and dealings precluded itself from proving against the estate of the makers one-half the debt, then it has released and discharged his property from all liability to pay that half; and if the endorser, by the holder's acts and deal-ings with the makers has lost his right to prove the note, (that is the whole note and not half of it,) against the estate of the maker of the note, then it is submitted that the endorser is dis-charged in law and in equity.   The holder cannot impair the endorser's remedy over against the maker and at the same time hold him liable on the endorsement.   *Phelps* v. *Borland*, 103 N. Y. 406.   It is respectfully submitted, however, that the bank cannot prove the claim, or even a moiety.   *In re Stein*, 16 Nat. Bank. Reg. 569.   Under the first subdivision of Rev. Stat. § 5021, it has been held, that the acts and knowledge

of the creditor's attorney who procured the judgment constituting the fraudulent preference, were the acts and knowledge of the creditor himself. *Rogers* v. *Palmer*, 102 U. S. 263. In the case at bar, the attorneys employed by the bank to procure the judgments against the bankrupts were the bankrupts' attorneys. The attorneys knew the purpose of the judgments, to wit: to obtain a preference which was a fraud. The knowledge and acts of the attorneys being imputed to the bank, their knowledge and acts being the bank's knowledge and acts, the bank was guilty of actual fraud.

The plaintiff in error, the endorser of the notes, cannot prove them against the estate of the maker, as he is prohibited from proving on the same grounds, and for the same reason that the defendant in error is. To allow the plaintiff in error to prove a debt which the defendant in error is prohibited from proving would defeat the very object of the law. Therefore, in such case, it must be held that the endorser is discharged from all liability to the holder of the note. *Bartholow* v. *Bean*, 18 Wall. 635; *In re Ayer*, 6 Bissell, 48. The precise question involved in this case has been decided by the Court of Appeals of the State of Kentucky in accordance with the contention of the plaintiff in error in this case. *Northern Bank of Kentucky* v. *Cooke*, 13 Bush, 340. See also *In re Wilson*, 11 Ves. 410; *Brown* v. *Williams*, 4 Wend. 360; *Shutts* v. *Fingar*, 100 N. Y. 543.

It will be seen by the record in this case that the bank not only obtained a judgment against the makers of the notes, but had, through the sheriff, obtained a levy on their property which was sufficient to pay the debt; but, by its attorneys it appeared in court and consented to release the property from the levy of the sheriff, as such, and converted him into an officer of the Bankrupt Court, and discharged the lien of the execution. This was done without the consent of the endorser, and it is respectfully submitted that, irrespective of the question hereinbefore discussed, it discharged the endorser. Without the consent of the bank, the sheriff had no right to surrender the property upon which he had levied and remand the funds to another jurisdiction. *National Bank & Loan*

*Co. of Watertown* v. *Babbitt*, 17 Hun, 447; *Ansonia Brass & Copper Co.* v. *Babbitt*, 74 N. Y. 395; *O'Brien* v. *Weld*, 92 U. S. 81; *Marshall* v. *Knox*, 16 Wall. 551; *Smith* v. *Mason*, 14 Wall. 419; *Ducker* v. *Rapp*, 67 N. Y. 464; see also *Gardner* v. *Oliver Lee & Co.'s Bank*, 11 Barb. 558, and *Phelps* v. *Borland*, 103 N. Y. 406.

Aside from the questions of surrender and right of the bank to prove its claim against the bankrupt's estate, it is submitted the endorser is discharged by reason of the changed relations brought about by the acts of the holder of the notes.

(*a.*) The bank fraudulently procured judgment on the notes, and when requested so to do, refused to surrender its unlawful preference. While in this position, by its own wrongful act it disabled itself from proving its claim against the bankrupts' estate, because it could not hold on to its judgment and execution, and proceed in the bankruptcy court at the same time. Section 5084 bars the way. Nor could the endorser have taken up the notes and proved them against the bankrupts' estate. He could only be subrogated to the rights of the holder. The time of payment was thus extended, which, by the unquestioned rule of law as to commercial paper, discharges the endorser. *United States Bank* v. *Hatch*, 6 Pet. 250; *Ducker* v. *Rapp*, 67 N. Y. 464; *Pomeroy* v. *Tanner*, 70 N. Y. 547; *Martin* v. *Thomas*, 24 How. 315.

Any dealing with the principal by the creditor which amounts to a departure from the contract by which the surety (accommodation endorser) is bound, and which by possibility might vary or enlarge his liabilities, operates to discharge the surety. *Ludlow* v. *Simond*, 2 Caines' Cas. 1; *Miller* v. *Stewart*, 9 Wheat. 680; *United States* v. *Boecker*, 21 Wall. 652.

*Mr. John Lansing* for defendant in error.

MR. JUSTICE SHIRAS delivered the opinion of the court.

John C. Streeter, the plaintiff in error, contends that the record discloses, as matter of fact, that the Jefferson County National Bank, being the holder of certain promissory notes

made by the firm of H. V. Cadwell & Co. entered into a collusive arrangement with said firm, who were insolvent at the time, and who were shortly afterwards adjudged bankrupts, whereby the bank was, by procuring judgment on said notes, to obtain an illegal preference over other creditors of the firm; that, by reason of this collusive arrangement, the bank disabled itself from proving its claim on these notes against the estate of the bankrupts, and thereby discharged Streeter, who was an accommodation endorser, from liability to the bank.

The assignee in bankruptcy brought an action in the District Court of the United States for the Northern District of New York, to test the validity of the bank's judgment, and it was adjudged by that court that the judgments were void as against the assignee, and, on appeal, this judgment was affirmed by the Circuit Court.

The case will be found reported as *Brown* v. *Jefferson County National Bank*, in 19 Blatchford, 315.

An examination of that case discloses that the judgment in favor of the bank was held an illegal preference, within the purview of the bankrupt law, because the attorneys employed to represent the bank in bringing the suit and obtaining the judgment had been the attorneys of H. V. Cadwell & Co., and, as such, had obtained knowledge of their insolvent condition and of their desire that the bank should obtain a preference.

The question that was presented to the New York Supreme Court and the New York Court of Appeals was, whether the fraud imputed to the bank, arising from the knowledge of its attorneys of the insolvent condition of H. V. Cadwell & Co. at the time the judgments were obtained, was such a case of fraud as to disable the bank from proving its claim in bankruptcy, and thus to effect a discharge of Streeter as endorser.

The provision of section 5084 of the Revised Statutes of the United States is as follows:

"Any person who, since the second day of March, eighteen hundred and sixty-seven, has accepted any preference, having reasonable cause to believe that the same was made or given

by the debtor contrary to any provisions of the act of March two, eighteen hundred and sixty-seven, chapter one hundred and seventy-six, to establish a uniform system of bankruptcy, or to any provisions of this Title, shall not prove the debt or claim on account of which the preference is made or given, nor shall he receive any dividend therefrom until he shall first surrender to the assignee all property, money, benefit or advantage received by him under such preference."

Section 5021, as amended in 1874, (act of June 22, 1874, 18 Stat. 178, 181, c. 390, § 12,) is as follows:

" *Provided,* That the person receiving such payment or conveyance had reasonable cause to believe that the debtor was insolvent, and knew that a fraud on this act was intended and such person, if a creditor, shall not, in cases of actual fraud on his part, be allowed to prove for more than a moiety of his debt, and this limitation on the proof of debts shall apply to cases of voluntary as well as involuntary bankruptcy."

It is contended, on behalf of the plaintiff in error, that the bank did not, within the meaning of the law, surrender its preference, and hence could not prove its claim; and that the case was one of " actual fraud " on the part of the bank, which could not, therefore, in any event prove for more than a moiety of its debt.

To sustain the contention that the bank did not surrender its preference, it is urged that the bank did not at once, on demand of the assignee, turn over the goods levied on, but litigated the matter with the assignee in both the District and Circuit Courts, and that the proceeds of the executions were not relinquished until final judgment was entered against the bank.

It was the opinion of the state court that as the sheriff, having custody of the goods seized on execution was, with the consent of the bank's attorneys, appointed special receiver, and was ordered to sell the goods and pay the proceeds into court, to await the result of the litigation between the bank and the assignee in bankruptcy, and that as the proceeds were finally turned over to the assignee, and thus became subject to distribution as bankruptcy assets, the transaction amounted

to a surrender under section 5084. In so holding we think the state court was right.

As the bank did not, at any time, receive any money or property from the insolvent firm, but pursued only a lawful remedy in a lawful manner, it was not under any legal obligation to abandon its executions, and to turn over their fruits to the assignee immediately upon demand. We do not perceive that the course of the bank, in resisting the claim of the assignee by setting up a defence, is subject to just criticism, or thereby estopped itself from proving its claim after the assignee had prevailed in his suit.

The endeavor of the bank to maintain its executions would, if successful, have been for the benefit of the endorser, who would, in that event, have been the last to complain, and it is certainly not apparent why the endorser should be discharged from his liability by the effort of the bank to legally collect a debt in his exoneration.

The decision of the state court, that the facts did not make out a case of actual fraud on the part of the bank, so as to deprive it of a right to prove for more than a moiety of its debt, and thus relieve the endorser of liability, in whole or in part, seems to be well founded in reason. There was no actual knowledge by the bank or its officers that the insolvent firm had done anything whatever to facilitate the procurement of the judgments. There was no giving and accepting of any security. There was no finding in the District Court of the United States of actual fraud.

The state court cites with approval, the case *In re Riorden*, 14 Nat. Bank. Reg. 332, in which it was held by Mr. Justice Blatchford, then sitting as District Judge, that a mere fraud on the bankrupt law, by the acceptance of a preference, was not, in itself, actual fraud;—and, commenting on this decision, the court said: "Such conclusion seems just and equitable. The bringing of an action by a creditor in the ordinary mode of procedure in the state courts, and procuring a judgment, may be, as in this case, constructive fraud, for which the lien will be set aside. But even that will depend upon the further fact that bankrupt proceedings shall be instituted within the

limited time provided by law. If such proceedings are not so begun, the lien would be valid and effectual. How, then, can it be construed to be actual fraud to pursue a legal remedy which may be efficacious, and especially when no action of the bankrupt debtor gives the creditor the obnoxious preference?" [Record. This case is not reported. See 36 Hun, 640.]

It follows that, as the bank was not precluded from proving its claim, Streeter, the endorser, could, by paying and lifting the notes, have participated in the distribution of the bankrupt estate, and hence, has failed to show any defence to the suit of the bank. The judgment of the court below is therefore

*Affirmed.*